UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ANISSAS MARIE GONZALES,                                   Case No. 17-12712-tl13

    Debtor.

## OPINION

    Before the Court is the chapter 13 trustee's request for guidance about how to respond to a tax levy she received from the State of New Mexico, attempting to levy on money owed to the debtor's bankruptcy counsel. Before the levy, the Court had confirmed a chapter 13 plan and approved $2,940.30 as compensation for counsel's services. The trustee had written a check to counsel for his approved fees, but had not mailed it. Having reviewed the facts and the relevant statutory and case law, the Court finds and concludes that: the tax levy was broad enough to encompass the debt owed to the debtor's counsel; the trustee is holding enough money that is not estate property to pay the debt; the levy did not violate the automatic stay; and the debtor's counsel is entitled to a $1,000 exemption from the levy. The trustee therefore should send the $1,940.30 to the State of New Mexico and $1,000 to debtor's counsel.

### I.     FACTS[1]

    Anissas Marie Gonzales ("Debtor") filed this chapter 13 case on October 27, 2017. Peter A. Keys is her bankruptcy counsel. Debtor filed a chapter 13 plan on November 28, 2017. Her first plan payment of $610 was made on or about December 5, 2017.

---

[1] These facts were stipulated to, or else were taken from the docket in this bankruptcy case, of which the Court takes judicial notice. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket").

The chapter 13 trustee ("Trustee") and a secured creditor objected to confirmation of Debtor's plan. The objections were resolved, and on May 11, 2018, the Court entered an order confirming the plan. By then, Debtor had paid the Trustee $3,660, of which the Trustee was holding $3,294.[2]

Mr. Keys filed a fee application on May 13, 2018. The Trustee objected. On June 6, 2018, the Court entered a stipulated order approving Mr. Keys' fee application in the amount of $2,940.30.

One June 1, 2018, the Trustee received the first post-confirmation plan payment, for $750.

On June 15, 2018, the Trustee was served with a Warrant of Levy from the State of New Mexico Taxation and Revenue Division ("TRD"). Mr. Keys was identified as the delinquent taxpayer.

When she received the warrant of levy, the Trustee was in the process of making monthly disbursements by check. She had not yet disbursed any money to creditors. The Trustee had printed a check to Mr. Keys for $2,940.30, but had not mailed it. Instead of mailing the check, the Trustee filed the motion for instruction.[3]

The Court held a hearing on the motion on June 19, 2018, and took the matter under advisement.

## II. DISCUSSION

A. The Trustee Owes Money to Mr. Keys.

The confirmed plan in this case provides:

Trustee will pay in full all allowed administrative claims and expenses pursuant to § 507(a)(2) as set forth below, unless the holder of such claim or expense had agreed to a different treatment of its claim . . . .

---

[2] The difference, $360, is the amount of Trustee fees that were deducted from the monthly payments.
[3] The Trustee had also printed a check to Ally Financial for $1,028.70. She mailed the check, which Ally has presented for payment.

-2-

The plan then details how Mr. Keys is to be paid. The Court's order allowing his fees is consistent with the plan provisions. Thus, the Trustee (not personally, but as the duly appointed chapter 13 trustee in this case), is indebted[4] to Mr. Keys for $2,940.30. The Trustee is holding enough money to pay the debt in full, in accordance with the priorities set out in the confirmed plan and the Bankruptcy Code.

B.  <u>The Levy Was Broad Enough to Encompass the Trustee's Debt to Mr. Keys</u>.

    1.    <u>The Tax Levy Statute</u>. N.M.S.A. § 7-1-31 provides:

> A. The secretary or secretary's delegate may proceed to collect tax from a delinquent taxpayer by levy upon all property or rights to property of the delinquent taxpayer and convert the property or rights to property to money by appropriate means.
> B. A levy is made by taking possession of property pursuant to authority contained in a warrant of levy or by the service, by the secretary or secretary's delegate or any sheriff or certified law enforcement employee of the department of public safety, of the warrant upon the taxpayer or other person in possession of property or rights to property of the taxpayer, upon the taxpayer's employer *or upon any person or depositary owing or who will owe money to* or holding funds of *the taxpayer*, ordering the taxpayer or other person to reveal the extent thereof and surrender it to the secretary or secretary's delegate forthwith or agree to surrender it or the proceeds therefrom in the future, but in any case on the terms and conditions stated in the warrant.

(emphasis added). It is clear from the italicized language that TRD is authorized to levy against amounts owed by depositaries and other third parties to delinquent taxpayers. *See also* N.M.S.A. 58-1-7 (TRD may levy against a deposit account, in accordance with § 7-1-31). In this respect, the tax levy is like a garnishment. *See* N.M.S.A. § 35-12-1 et seq.[5]

    2.    <u>The Warrant of Levy</u>. N.M.S.A. § 7-1-32 prescribes what a warrant of levy must contain. Surprisingly, it says nothing about debts (other than wages) owed to the taxpayer. Thus,

---

[4] § 101(5) defines a claim as a "right to payment."
[5] Pursuant to N.M.S.A. § 35-12-1(D)(1) and 2(A), garnished property can include indebtedness of the garnishee to the judgment debtor.

-3-

while § 7-1-31(B) makes clear that tax levies may apply to debts as well as property, § 7-1-32 does not.

The warrant of levy served on the Trustee complied with § 7-1-32, but has additional language that probably was intended to encompass debts. The third paragraph of the warrant provides: "You are ordered to reveal the property or rights in your possession *(or with respect to which you are obligated)* belonging to the taxpayer. . . ." (emphasis added). This parenthetical is repeated in the next paragraph. Use of the word "obligated" echoes the term in § 7-1-34(A): "Any person in possession of *or obligated with respect to* property or rights to property subject to levy upon which a levy has been made shall surrender the property or rights, *or discharge such obligation* . . . ." (emphasis added).

The Court concludes that it was the intention of the New Mexico legislature to give TRD the power to levy on debts owed by third parties to delinquent taxpayers. Further, the Court concludes that TRD intended to levy on debts owed to Mr. Keys when it served the warrant of levy in this case.[6] The language in the warrant is ambiguous and unclear, but the best interpretation, all things considered, is that the warrant includes debts owed to Mr. Keys.

C. <u>The Funds the Trustee Held on Confirmation Were Mostly not Estate Property</u>.

On June 15, 2018, the Trustee held about $3,969, of which $675[7] was received post-confirmation.

1. <u>Pre-Confirmation Property of the Estate</u>. When a debtor files a chapter 13 bankruptcy case, an estate is created. § 541(a).[8] The estate includes all the debtor's real and personal property, including property acquired post-petition (e.g., post-petition wages). § 1306(a).

---

[6] It would be advisable to have the warrant language track § 7-1-31(B) more closely, at least when serving the warrant on depositories or parties who may be indebted to the delinquent taxpayer.
[7] The $750 plan payment received June 1, 2018, less a $75 trustee fee.
[8] Unless otherwise noted, all statutory references are to 11 U.S.C.

-4-

Debtors are required to file a plan within 14 days after the petition date, Fed. R. Bankr. Pro. 3015(b), and to begin making plan payments within 30 days after the petition date. § 1326(a)(1). Plan payments are made to the chapter 13 trustee. § 1326(a)(1)(A). There is no question that, before plan confirmation in this case, all plan payments made by Debtor were estate property.

        2.      <u>Post-Confirmation Property of the Estate</u>. Plan confirmation muddies the waters. Section 1327(b) provides:

> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

This language seems clear enough: unless the plan or a court order provides otherwise, all property of the estate vests in the debtor. The confirmation order in this case does not address vesting, and Debtor's plan does not provide otherwise.[9]

The difficulty lies in harmonizing § 1327(b) with § 1306(a), which provides:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>     (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
>     (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

Thus, while § 1327(b) vests all estate property in the debtor on plan confirmation, § 1306(a) implies that a bankruptcy estate will exist until the case is closed, dismissed, or converted, and will be augmented by after-acquired property and post-petition wages.[10]

---

[9] Paragraph 9.1 of the confirmed plan states: "Property of the estate shall revest in the debtor: [x] on plan confirmation, or [ ] at discharge or dismissal of the case.

[10] Other Bankruptcy Code provisions imply that the estate survives plan confirmation. *See, e.g.*, § 348(f)(2) (upon a bad faith conversion, property of the chapter 7 estate consists of all property of the estate on the date of conversion); § 349(b)(3) (upon dismissal, property of the estate revests in the pre-petition owner); § 704(9) (trustee required to make a final report of estate administration); and § 1301(a)(2) (co-debtor stay continues until the case is closed, dismissed, or converted).

Courts have proposed several ways to reconcile §§ 1306(a) and 1327(b). Some courts focus on § 1327(b), conclude that the estate terminates on confirmation, and hold that post-confirmation wages and property revert to the debtor. *See, e.g., In re Petruccelli,* 113 B.R. 5 (Bankr. S.D. Cal. 1990); *In re Dagen*, 386 B.R. 777, 782 (Bankr. D. Colo. 2008), citing *Oliver v. Toth (In re Toth),* 193 B.R. 992 (Bankr. N.D. Ga. 1996); *Shell Oil Co. v. Capital Fin. Servs.,* 170 B.R. 903, 905-06 (S.D. Tex. 1994); *In re Mason*, 51 B.R. 548 (D. Ore. 1985). These cases limit the function of § 1306(a) to the confirmation date, unless the plan provides otherwise.[11]

A competing view focuses on § 1306(a) and holds that all property remains estate property after confirmation. *See, e.g., Annese v. Kolenda,* 212 B.R. 851, 853 (W.D. Mich. 1997) (all property remains estate property post-confirmation); *In re Tarby,* 2012 WL 1390201 (Bankr. D.N.J.) (same); *In re Aneiro,* 72 B.R. 424, 429 (Bankr. S.D. Cal. 1987) (same). These cases interpret "vesting" under § 1327(b) as something less than the transfer of full title. In *Tarby*, for example, the court stated:

> The legal definition of the term "vest" provides several alternatives:
>
> vest, *vb* (15c) 1. To confer ownership (of property) upon a person. 2. To invest (a person) with the full title to property. 3. To give (a person) an immediate, fixed right of present or future enjoyment.
>
> Black's Law Dictionary 1699 (9th ed. 2009).
>
> The last of these alternatives, "to give (a person) an immediate, fixed right of present or future enjoyment," offers the best opportunity to reconcile § 1306(a) with § 1327(b). . . . § 1327(b) provides that when a debtor's plan is confirmed, the rights

---

[11] Several courts dislike the idea of chapter 13 trustees with no estates to administer. In *In re Root,* 61 B.R. 984 (Bankr. D. Colo. 1986), for example, the bankruptcy court said "If there is no existing estate upon confirmation, then what does the Chapter 13 Trustee administer? If there is no estate over which the Chapter 13 Trustee has control, then that Trustee is nothing more than an officious intermeddler." 61 B.R. at 985. *See also Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687, 691 (8th Cir. 1993) (quoting *Root*); *In re Schewe*, 94 B.R. 938, 944 (Bankr. W.D. Mich. 1989) (same); *In re Clark,* 71 B.R. 747 (Bankr. E.D. Pa. 1987) (same). The Court agrees that it is counterintuitive for a bankruptcy trustee to have no estate to administer. A trustee is defined as "One who, having legal title to property, holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary." Black's Law Dictionary (10th ed.) (first definition).

of the debtor to property of the estate are immediate, subject to the provisions of
the plan, in a manner that binds the debtor and all of the debtor's creditors. As well,
the debtor has a fixed right of future enjoyment of the property which will be free
and clear of the claims or interests of any creditor provided for by the plan, upon
the debtor's successful satisfaction of the plan provisions, at which point the debtor
will be entitled to a discharge under 11 U.S.C. § 1328. *In re Kolenda,* 212 B.R. 851,
854 (W.D.Mich.1997) ("One could understand the term ["vest"] to return to the
debtor something more than possession—i.e., full ownership rights in the property
except vis-à-vis the interest of the estate in fulfilling the plan.").

*In re Tarby,* 2012 WL 1390201, at *3. This interpretation of vesting has its critics.[12]

An intermediate view holds that some property leaves the estate on plan confirmation and vests in the debtor, but enough property remains in the estate to fund the plan. *See, e.g., In re Root*:

> After confirmation of a Chapter 13 Plan, all "property of the estate" is vested in the debtor, *unless* otherwise provided for in the Plan. "Any property which has not been designated in the plan or order of confirmation as necessary for the execution of the plan revests in the debtor ..." and is thus no longer "property of the estate". *In re Adams,* 12 B.R. 540 (Bankr. Utah 1981). Any property that has been designated in the plan or order of confirmation as necessary for the execution of the plan, *e.g.* post-petition wages up to the amount of the plan payments each month, remain "property of the estate."

61 B.R. at 985. *See also In re Adams*, 12 B.R. 540 (Bankr. D. Utah 1981); *In re Colon*, 345 B.R. 723 (Bankr. D. Kan. 2005); *In re Johnson*, 36 B.R. 958 (Bankr. D. Utah 1983); *McCray v. McCray(In re McCray)*, 62 B.R. 11 (Bankr. D. Colo. 1986); *In re Thompson*, 142 B.R. 961 (Bankr. D. Colo. 1992).

In the Court's opinion, the most logical and persuasive interpretation of §§ 1306(a) and 1327(b), a variant of the intermediate view, is the one announced by in *In re Fisher*:

> Rather than interpret sections 1306(a) and 1327(b) so that one or the other carries no meaning, we take an approach . . . [that] . . . upon confirmation, the property of the estate "vests" or transfers to the debtor, § 1327(b), but the estate survives and there does exist property of the estate after confirmation . . . .

---

[12] *See, e.g., Petruccelli,* 113 B.R. at 15 (vesting and revesting should not be interpreted to have different meanings when used in different Code sections); *Mason,* 45 B.R. at 500-01 (vesting must be different from having possession, which the debtors have by virtue of § 1306(b); *City of Chicago v. Fisher (In re Fisher),* 203 B.R. 958, 961 (N.D. Ill. 1997) (vesting must mean a change of ownership; otherwise § 1327(b) would have no meaning).

> . . . .
> Although the pertinent statutes are not crystal clear, we are still constrained by their text, which suggests to us the following interpretation: First, § 1306(a) defines "property of the estate" to include property and earnings acquired by the debtor after the case's commencement. While the case is pending, the post-petition property and earnings are added to the estate until confirmation, the event that triggers § 1327(b) and "vests" the property of the estate in the debtor. That is, the property interests comprising the pre-confirmation estate property are transferred to the debtor at confirmation, and this "vesting" is free and clear of the claims or interests of creditors provided for by the plan, § 1327(b), (c). Finally, the property of the estate once again accumulates property by operation of § 1306(a) until the case is "closed, dismissed, or converted."

203 B.R. at 962.[13] This interpretation has garnered a wide following. *See, e.g., In re Waldron,* 536 F.3d 1239, 1243 (11th Cir. 2008) (quoting *Fisher*); *Barbosa v. Solomon,* 235 F.3d 31, 36-37 (1st Cir. 2000); *Barnes v. Northwest Repossession, LLC*, 2017 WL 4410109, at *2 (N.D. Ill.); *In re Banks,* 521 B.R. 417, 424 (Bankr. M.D. Ga. 2014); *In re Peebles,* 500 B.R. 270, 277 (Bankr. S.D. Ga. 2013) (quoting *Waldron* and *Fisher*); *Boddie v. PNC Bank, NA,* 2013 WL 443773, at *4 (S.D. Ohio); *Armstrong v. McGinnis (In re McGinnis),* 2011 WL 3024848, at *4 (Bankr. M.D. Ala.) (quoting *Waldron* and *Fisher*); *In re Clouse*, 446 B.R. 690, 701-02 (Bankr. E.D. Pa. 2010); *Fritz Fire Protection Co., Inc. v. Wei-Fung Chang (In re Wei-Fung Chang),* 438 B.R. 77, 84 (Bankr. E.D. Pa.); *In re Reynard,* 250 B.R. 241, 246-47 (Bankr. E.D. Va. 2000). Two commentators cited *Fisher's* approach as "a perfect balance between sections 1306 and 1327," that "does not share any of the [other] interpretations' shortcomings." Peter Carpio and Jeffrey L. Cohen, *Modified Estate Transformation: When Does a Chapter 13 Estate Terminate?* 7 Am. Bankr. Inst. L. Rev. 213, 230 (Spring 1999).

A recent Tenth Circuit BAP decision, *Rael v. Wells Fargo Bank, N.A. (In re Rael),* 527 B.R. 799 (10th Cir. BAP 2015) (unpublished), discussed the interplay between §§ 1306(a) and 1327(b):

---

[13] In the last sentence, "property of the estate" probably should have been "estate."

> The Tenth Circuit has recognized the split in the Chapter 13 case law concerning the Chapter 13 vesting provisions and property of the estate, but has not indicated which approach it will follow. *See United States v. Richman (In re Talbot),* 124 F.3d 1201, 1207 n. 5 (10th Cir.1997) (acknowledging question over the vesting provisions of § 1327(b) and its impact on estate property upon confirmation of a Chapter 13 plan). The Tenth Circuit BAP has done the same. *See In re Vannordstrand,* 356 B.R. 788, No. KS–05–091, 2007 WL 283076, at *2 (10th Cir. BAP Jan. 31, 2007) (noting the "disputed issue" of whether "the 'vesting' of estate property in the debtor [in a Chapter 13 case] acts to terminate § 1306's inclusion of post-petition acquired property in the estate" but determining it need not decide the issue in that case).

527 B.R. at 799, *4. The *Rael* court cited *Fisher and* concluded that there is no controlling Tenth Circuit law, but held that the issue was not before the court. 527 B.R. at *6. *See also United States v. Richman (In re Talbot),* 124 F.3d 1201, 1208 (10th Cir. 1997) (citing *Fisher,* acknowledging the difficulty of harmonizing §§ 1306(a) and 1327(b), but deciding that the issue was not before the court); *In re Vannordstrand,* 356 B.R. 788, at *2 (10th Cir. BAP 2007) (unpublished) (same, but without citing *Fisher*).

A recent Supreme Court case lends support for the argument that a chapter 13 estate survives confirmation of a plan. In *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835-38 (2015), the Supreme Court dealt with the question of how to distribute funds held by a chapter 13 trustee in the event the debtor elects to convert her case to chapter 7. The court ruled that the funds must be returned to the debtor, and may not be used by the chapter 13 trustee to pay creditors. In so holding, the court observed:

> In a Chapter 13 proceeding, postpetition wages are "[p]roperty of the estate." 11 U.S.C. § 1306(a) and may be collected by the Chapter 13 trustee for distribution to creditors, § 1322(a)(1)."

*Id.* at 1834. Elsewhere the court stated: "Accordingly, the Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his bankruptcy petition, and any wages and property acquired after filing. § 1306(a)." *Id.* at 1835.

The Court concludes that *Fisher* properly construed §§ 1306(a) and 1327(b), and likely would be adopted by the Tenth Circuit. The *Fisher* interpretation gives effect to both Code sections, reading them in a natural, unstrained manner.[14] The Court will follow *Fisher*.

D.     The Levy Did not Violate the Automatic Stay.

The automatic stay prevents non-debtor parties from, inter alia, taking action to obtain possession of property of the estate, § 362(a)(3), or creating, perfecting, or enforcing liens against property of the estate. § 362(a)(4). Thus, it would violate the automatic stay for TRD to levy estate property administered by the Trustee. *See, e.g., Laughlin v. Unites States,* 912 F.2d 197, 203 (8th Cir. 1990 (Chief Judge Magill says in dissent that "[g]iven that undistributed funds held by a Chapter 13 trustee postconfirmation are property of the estate, the plain language of § 362(a) requires a finding that the IRS violated the automatic stay"); *Price v. United States (In re Price),* 130 B.R. 259, 261 (N.D. Ill. 1991) (IRS post-confirmation levy violated the automatic stay); *Holden v. United States (In re Holden),* 236 B.R. 156, 160 (Bankr. D. Vt. 1999) (IRS post-confirmation setoff violated the automatic stay); *In re Elrod*, 523 B.R. 790, 795-97 (Bankr. W.D. Tenn. 2015) (same).

Sections 362(a)(2), (3), and (4) only protects estate property, however. *See also* § 362(c)(1). As shown above, the Trustee is holding enough non-estate money to pay Mr. Keys' claim in full. Because of that, TRD did not violate the automatic stay when it served the warrant of levy. *See generally In re Petruccelli*, 113 B.R. at 7; *In re Rutt,* 98 B.R. 490, 492-93 (Bankr. D. Neb. 1988); *In re Mason*, 45 B.R. at 501. The levy was an act to obtain property of the Debtor, not property of the estate. The other protections of § 362(a) do not apply.

---

[14] *Fisher's* interpretation does leave one rough edge. On plan confirmation, the chapter 13 trustee will have control over the debtor's funds, not estate funds. It is more natural to think of money in the chapter 13 trustee's possession as estate property, but for a short time (typically until the initial post-confirmation disbursement has been completed), money held by the trustee is the debtor's property.

E.   Mr. Keys Has a $1,000 exemption.

N.M.S.A. § 7-1-36(A) provides:

> There shall be exempt from levy the money or property of a delinquent taxpayer in a total amount or value not in excess of one thousand dollars ($1,000).

The current record indicates that Mr. Keys is entitled to this exemption.

### III.   CONCLUSION

$3,294 of the funds held by the Trustee on the date of levy were Debtor's property, not property of the bankruptcy estate. Because the Trustee only owed Mr. Keys $2,940.30, TRD's warrant of levy did not violate the automatic stay. Mr. Keys is entitled to $1,000 of the funds, by reason of his exemption. The Trustee is directed to pay TRD the $1,940.30, and to pay Mr. Keys $1,000. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: July 16, 2018

Copies to: counsel of record